## In re Petitions of Electors for Referendum for Annexation of Certain Properties in Williams Township to City of Easton

*Thomas W. Houser, for objectors.*
*Henry R. Newton,* for respondents.

FRANCIOSA, *J.,* September 27, 1989 — On August 7 and 8, 1989, several petitions were filed to initiate a referendum. Each petition contained the following heading:

### *"Question"*

"Shall the properties situate within the Township of Williams, Northampton County, Pennsylvania designated by Northampton County Tax Assess-

ment Office as parcels nos. *M10 3 1, M9 17 14, M9 3 40, M9 17 16, M10 17 2, M10 17 2A, M10 17 3, M10 17 5, M10 17 4, M10 3 2, M10 3 3, M10 3 3B, M10 3 3A, M10 3 4, M10 3 5, M9 17 6, M9 17 7, M9 17 7A, M9 17 8, M9 17 10, M9 17 11, M9 17 12 and M9 17 13* be annexed to and become a part of the City of Easton, a Third Class City situate within Northampton County, Pa.?"

Objections to these petitions have been filed by Williams Township and an individual elector. The case was submitted on the face of the record pursuant to a stipulation that no additional evidence was needed because the facts are not in dispute. Accordingly, the undisputed facts appearing on the face of the record may be summarized as follows.

The signatures and addresses of 66 purported electors of Williams Township and 318 from the City of Easton appear on the several petitions.[1] The township petitions were filed by Mr. Peter Thompson. Those for city electors were filed by Mayor Salvatore Panto. Neither of them signed the petitions as circulators. Nor did they attach affidavits of circulators. The signatures of 45 township electors are required. The petitions contain 52 signatures verified by the registrar of Northampton County. From the city, the signatures of 258 were needed and the petitions contain 318 unverified signatures.[2]

The objectors contend that the Election Code governs and, therefore, the petitions in question fail to meet the numerous requirements of the code as to form and content. We disagree; and, we will

---

1. Article 9, section 14 of the Pennsylvania Constitution calls for a petition signed by electors comprising five percent of the number of electors voting for the office of governor in the last gubernatorial general election in each municipality.

2. The objectors are not contesting the status of the Easton signers as "duly registered electors."

proceed to state our reasons for rejecting the argument made on behalf of the objectors.

Under current law, annexation is controlled by Article 9, sections 8 and 14 of the Constitution of Pennsylvania. When these provisions of the constitution were drafted in 1968, the legislature was directed to enact uniform legislation establishing procedures for consolidation, merger or change of boundaries of municipalities. The legislature was given two years following the amendment's adoption to enact such laws. The amendment was adopted in 1970, but no enactments have been made by the legislature up to this date. In the absence of such legislation, the constitution requires that all annexations be commenced by initiative and referendum. *Derry Twp. v. Borough of Hummelstown*, 458 Pa. 396, 326 A.2d 342 (1974).

At the moment, there are no appellate court decisions dealing with the issue raised by the objectors. In the case of *In re Referendum for Sunday Motion Picture Exhib.*, 383 Pa. 162, 117 A.2d 699 (1955), our Supreme Court did hold that the referendum petition had to meet requirements for nominating petitions under the Election Code in respect to form, time and manner of circulation and contents. However, the Sunday Motion Picture Act of July 2, 1935, P.L. 599, 4 P.S. §59 et seq., expressly adopted "the election laws of the commonwealth" as the procedure to be followed in placing the question on the ballot. Thus, the case is clearly distinguishable from the one at bar in that the Election Code was made the procedure by legislative enactment and that has not been done by the legislature with respect to Article 9, sections 8 and 14 of the constitution.

In the absence of a legislative mandate which expressly imposes the requirements of the Election

Code upon annexations by initiative and referendum, we see no reason to depart from the general rule followed in most jurisdictions. As stated by the majority of the courts, all doubts must be resolved in favor of the rights of the people to vote upon an issue. See *Hermett v. Meier,* 173 N.W.2d 907 (N.D. 1970); *State ex rel. Morris v. Marsh,* 162 N.W.2d 262 (Neb. 1968); *Yenter v. Baker,* 248 P.2d 311 (Colo. 1952); and, *Vosa v. Davis,* 418 S.W.2d 163 (Mo. 1967).

Although the county-level case of *Whitemarsh Township Referendum,* 7 D.&C. 2d 271 (1956), is not binding precedent, we adopt the reasoning of the court that referendum petitions filed outside the Election Code need not be set aside for failure to comply with its requirements. It is true that the petition in the *Whitemarsh Township* case contained an affidavit of the circulator. However, the petition was based on the First Class Township law which provided that the petition comply with the local rules of court then applicable to proceedings filed in the quarter sessions. As we have already emphasized herein, the instant petitions are based on Article 9, section 14 of our constitution. We believe it is very significant that section 14 defines the required petition in this manner:

"[A] proposal for referendum signed by electors comprising five percent of the number of electors voting for the office of governor in the last gubernatorial general election in each municipality or area affected."

The constitution does not require the proposal be accompanied by affidavits or verifications of any type. In addition, this court has no local rules pertaining to filings with the registrar of voters. Furthermore, we fail to see how the objectors are prejudiced by the absence of verifications. The

petitions aver that the signers are duly registered electors of each municipality. Also contained is the identification of certain parcels of land. The objectors have not challenged the qualifications of the signers or the locations of the properties to be annexed. Under such circumstances, we conclude that their objections place form above substance. We do not believe that the "grass roots" decision-making process by initiative and referendum should be defeated where the defects are raised for mere technical reasons and not for the purpose of bringing genuine issues of fact to the attention of the court.

Wherefore, we enter the following

## ORDER OF COURT

And now, September 27, 1989, the objections to the instant petitions are denied and dismissed.

Accordingly, the registrar is directed to place on the ballot the proposal for annexation of certain properties in Williams Township to the City of Easton.